No. 25-12095

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

STATE OF FLORIDA,
FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION,
FLORIDA DEPARTMENT OF MANAGEMENT SERVICES,
CATHOLIC MEDICAL ASSOCIATION,

Plaintiffs-Appellants,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,

Defendants-Appellees.

_____

On Appeal from the United States District Court
for the Middle District of Florida

_____

**BRIEF FOR DEFENDANTS-APPELLEES**

_____

BRETT A. SHUMATE
  *Assistant Attorney General*

CHARLES W. SCARBOROUGH
ASHLEY C. HONOLD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7261*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-9018*

**STATEMENT REGARDING ORAL ARGUMENT**

The district court's decision should be affirmed for the reasons stated by that court—plaintiffs' claims were properly dismissed as moot, and no exception to mootness applies here. Although the government does not believe that oral argument is necessary, it stands ready to present oral argument if the Court would find it useful.

**TABLE OF CONTENTS**

**Page**

TABLE OF CITATIONS .................................................................................................iii

STATEMENT OF JURISDICTION ...............................................................................1

STATEMENT OF THE ISSUE.......................................................................................1

STATEMENT OF THE CASE.........................................................................................2

      A.     Statutory and Regulatory Background and Prior Proceedings ...................2

      B.     Related Litigation .........................................................................................8

      C.     Standard of Review.....................................................................................10

SUMMARY OF ARGUMENT..................................................................................... 10

ARGUMENT ................................................................................................................. 11

THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DISMISSAL
      ON MOOTNESS GROUNDS............................................................................ 11

      A.     Plaintiffs' Challenge to the 2024 Rule Is Moot. ........................................11

      B.     Plaintiffs' Arguments That the District Court Erred in Dismissing
             This Case as Moot Lack Merit, and Any Such Errors Would Be
             Harmless In Any Event Because the Case Is Now Plainly Moot. ...........17

CONCLUSION ............................................................................................................. 33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

**Cases:**                                                                                                                                    **Page(s)**

*Al Najjar v. Ashcroft,*
   273 F.3d 1330 (11th Cir. 2001) ............................................................... 13

*Alabama v. U.S. Secretary of Educ.,*
   No. 24-12444, 2024 WL 3981994 (11th Cir. Aug. 22, 2024) .................................... 18

*Alabama Legislative Black Caucus v. Alabama,*
   575 U.S. 254 (2015) ........................................................................... 22, 23, 25

*Already, LLC v. Nike, Inc.,*
   568 U.S. 85 (2013) ............................................................................. 13, 15

*Arbaugh v. Y & H Corp.,*
   546 U.S. 500 (2006) ................................................................................ 22

*Arzamendi v. Hegseth,*
   No. 24-10557, 2025 WL 2978447 (5th Cir. Oct. 22, 2025),
   *petition for reh'g filed* (Dec. 8, 2025) ....................................................... 21

*BankWest, Inc. v. Baker,*
   446 F.3d 1358 (11th Cir. 2006) ................................................. 12, 20, 25, 32

*Bischoff v. Osceola County,*
   222 F.3d 874 (11th Cir. 2000) ..................................................................... 22

*Bostock v. Clayton County,*
   590 U.S. 644 (2020) ................................................................................ 3

*Chafin v. Chafin,*
   568 U.S. 165 (2013) ............................................................................... 12

*City of Miami Gardens v. Wells Fargo & Co.:*
   931 F.3d 1274 (11th Cir. 2019), *reh'g denied en banc,*
   956 F.3d 1319 (11th Cir. 2020) .................................................................. 23
   956 F.3d 1319 (11th Cir. 2020) .............................................................. 23, 25

*City of Waukesha v. EPA,*
   320 F.3d 228 (D.C. Cir. 2003) ................................................................... 21

*Cuban Am. Bar Ass'n v. Christopher,*
   43 F.3d 1412 (11th Cir. 1995) ................................................................... 23

*EEOC v. Alton Packaging Corp.*,
901 F.2d 920 (11th Cir. 1990) ........................................................32

*FBI v. Fikre*,
601 U.S. 234 (2024) ........................................................ 31

*Flanigan's Enters., Inc. v. City of Sandy Springs*,
868 F.3d 1248 (11th Cir. 2017) ........................................ 20

*Frey v. EPA*,
270 F.3d 1129 (7th Cir. 2001) ..................................... 25, 27

*Gagliardi v. TJCV Land Tr.*,
889 F.3d 728 (11th Cir. 2018) ........................................ 12

*Hall v. Beals*,
396 U.S. 45 (1969) ........................................................13

*Ho v. Russi*,
45 F.4th 1083 (9th Cir. 2022) ........................................27

*Keister v. Bell*,
29 F.4th 1239 (11th Cir. 2022) ...................................... 13

*Larsen v. U.S. Navy*,
525 F.3d 1 (D.C. Cir. 2008) ............................................19

*Moore v. La. Bd of Elementary & Secondary Educ.*,
743 F.3d 959 (5th Cir. 2014) ...........................................16

*Neiderhiser v. Borough of Berwick*,
840 F.2d 213 (3d Cir. 1988) ............................................27

*Purpose Built Fams. Found., Inc. v. United States*,
95 F.4th 1346 (11th Cir. 2024) ...................................... 10

*Regalado v. Dir., Ctr for Disease Control*,
2023 WL 2399989 (11th Cir. Jan. 18, 2023) .....................19

*Reynolds v. Army & Air Force Exch. Serv.*,
846 F.2d 746 (Fed. Cir. 1988) .........................................26

*Socialist Workers Party v. Leahy*,
145 F.3d 1240 (11th Cir. 1998) ...................................... 31

*Soliman v. United States ex rel. INS,*
    296 F.3d 1237 (11th Cir. 2002) ................................................................. 28, 32

*Spencer v. Kemna,*
    523 U.S. 1 (1998) ................................................................................... 12, 13

*Tennessee v. Becerra,*
    739 F. Supp. 3d 467 (S.D. Miss. 2024) ...............................................................8

*Tennessee v. Becerra,*
    739 F. Supp. 3d 522 (E.D. Tex. 2024), *modified on reconsideration,*
        No. 6:24-cv-211, 2024 WL 4490621 (E.D. Tex. Aug. 30, 2024)...........................8

*Tennessee v. Kennedy,*
    No. 1:24-cv-161, 2025 WL 2982069 (S.D. Miss. Oct. 22, 2025) ......... 1, 8, 10, 12, 16

*Troiano v. Supervisor of Elections,*
    382 F.3d 1276 (11th Cir. 2004) .......................................................................13

*United States v. Garcia,*
    718 F.2d 1528 (11th Cir. 1983) ...................................................................... 26

*United States v. Williams,*
    475 F.3d 468 (2d Cir. 2007) .......................................................................... 22

*United States ex. rel Polansky v. Executive Health Res., Inc.,*
    599 U.S. 419 (2023)........................................................................................30

*University of S. Ala. v. American Tobacco Co.,*
    168 F.3d 405 (11th Cir. 1999) ........................................................................ 22

*Vermont Agency of Nat. Res. v. United States ex rel. Stevens,*
    529 U.S. 765 (2000)........................................................................................29

**Statutes:**

5 U.S.C. § 705 ............................................................................................ 8, 9

20 U.S.C. § 1681(a) ........................................................................................ 2

28 U.S.C. § 1291 ............................................................................................ 1

28 U.S.C. § 1331 ............................................................................................ 1

28 U.S.C. § 1346 .......................................................................... 1

28 U.S.C. § 1361 .......................................................................... 1

31 U.S.C. § 3730(c)(2)(A) ........................................................ 30

42 U.S.C. § 18116(a) ............................................................... 2, 4

**Regulatory Materials:**

45 C.F.R. § 92.101(a)(2)(i) ..................................................18, 19

45 C.F.R. § 92.101(a)(2)(iv) .................................................18, 19

45 C.F.R. § 92.101(a)(2)(v) ..................................................18, 19

45 C.F.R. § 92.206(b)(1) ............................................................. 3

45 C.F.R. § 92.206(b)(4) ............................................................. 3

45 C.F.R. § 92.207(b)(3)-(4) ..................................................... 3

Exec. Order No. 14,168,
    90 Fed. Reg. 8615 (Jan. 30, 2025) ....................... 5, 6, 12, 14, 26, 28, 29, 30

Exec. Order No. 14,187,
    90 Fed. Reg. 8771 (Feb. 3, 2025) ............................... 6, 14, 15

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ................................................1, 8, 16, 17

**Other Authorities:**

81 Fed. Reg. 31,376 (May 18, 2016) ......................................... 2

85 Fed. Reg. 37,160 (June 19, 2020) ..................................... 2, 3

89 Fed. Reg. 37,522 (May 6, 2024) ....................................... 2, 3

Off. on Women's Health, HHS, *Sex-Based Definitions,*
    https://perma.cc/H7XX-RHX3.........................................6, 14, 31

Order, *Catholic Benefits Ass'n v. Becerra*, No. 3:23-cv-203
     (D.N.D. June 5, 2025), Dkt. No. 78......................................................................9

Order, *McComb Child.'s Clinic v. Fink*,
     No. 5:24-cv-48 (S.D. Miss. Dec. 23, 2025), Dkt. No. 60......................................... 9, 16

Order, *Texas v. Becerra*, No. 6:24-cv-211 (Apr. 17, 2025),
     Dkt. Nos. 52, 53.......................................................................................................9

## STATEMENT OF JURISDICTION

Plaintiffs asserted jurisdiction under 28 U.S.C. §§ 1331, 1346, and 1361. Dkt. No. 1, at 10, ¶ 30.[1] The district court dismissed plaintiffs' case without prejudice as moot on June 9, 2025. Dkt. No. 79. Plaintiffs filed a timely notice of appeal on June 16, 2025. Dkt. No. 80; Fed. R. App. P. 4(a)(1)(B). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

During the previous administration, in 2024, the U.S. Department of Health and Human Services (HHS) issued a rule implementing Section 1557 of the Affordable Care Act, which prohibits discrimination on the basis of certain protected characteristics, including sex. Plaintiffs challenged the Rule's interpretation of sex discrimination as including gender-identity discrimination. After the change in administration, the President issued two executive orders making clear that the prior administration's position on gender identity is legally untenable. Moreover, after the district court dismissed this case as moot, a different district court universally vacated various provisions of the Rule related to gender-identity discrimination. *Tennessee v. Kennedy*, No. 1:24-cv-161, 2025 WL 2982069, at *13 (S.D. Miss. Oct. 22, 2025). The government did not appeal the adverse decision in *Tennessee*.

---

[1] District court documents are cited as "Dkt. No. #, at #," where the page number refers to the CM/ECF pagination.

The question presented is whether, in light of the two executive orders expressly disavowing the 2024 Rule's gender-identity provisions and the universal vacatur of those provisions in a final judgment in a separate case, where the time to appeal has now expired, plaintiffs' challenge to the 2024 Rule is moot.

## STATEMENT OF THE CASE

### A.    Statutory and Regulatory Background and Prior Proceedings

**1.**  Section 1557 of the Affordable Care Act (ACA) prohibits, as relevant here, "any health program or activity" "receiving Federal financial assistance" from discriminating against an individual based on "ground[s] prohibited under" several other statutes.  42 U.S.C. § 18116(a).  One of the referenced statutes is Title IX of the Education Amendments of 1972, which prohibits discrimination "on the basis of sex." 20 U.S.C. § 1681(a).

HHS promulgated regulations implementing Section 1557's prohibition on sex discrimination in 2016, 2020, and 2024.  *See* 81 Fed. Reg. 31,376 (May 18, 2016) (2016 Rule); 85 Fed. Reg. 37,160 (June 19, 2020) (2020 Rule); 89 Fed. Reg. 37,522 (May 6, 2024) (2024 Rule or Rule).  The 2016 Rule defined discrimination "on the basis of sex" to include discrimination on the basis of "gender identity."  81 Fed. Reg. at 31,467.  After a change in administration, HHS issued the 2020 Rule, which rescinded the 2016 Rule's provisions defining sex discrimination, including the portion regarding gender-identity discrimination.  *See* 85 Fed. Reg. at 37,162-65.  In place of those provisions, the 2020 Rule paraphrased the statutory language without adopting a new

2

regulatory definition of sex discrimination. *See id.* at 37,178. In the 2020 Rule's preamble, HHS explained that it did not believe that either Section 1557 or Title IX prohibited gender-identity discrimination. *See id.* at 37,162, 37,168, 37,183-86, 37,207.

Following the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644, 660-61 (2020), which held that the prohibition on discrimination "because of . . . sex" in Title VII encompasses discrimination because of sexual orientation or gender identity, and after another change in administration, HHS issued the 2024 Rule, which interprets Section 1557's prohibition against sex discrimination to include discrimination based on gender identity. 89 Fed. Reg. at 37,571-37,578. Among other things, the Rule provided that covered entities must not "[d]eny or limit health services . . . to an individual based upon the individual's sex assigned at birth, gender identity, or gender otherwise recorded." 45 C.F.R. § 92.206(b)(1). Additionally, the Rule precluded covered entities from denying or limiting health services "sought for purpose of gender transition or other gender-affirming care that the covered entity would provide to an individual for other purposes if the denial or limitation is based on an individual's sex assigned at birth, gender identity, or gender otherwise recorded." *Id.* § 92.206(b)(4). Finally, the Rule prohibited covered entities from "[h]av[ing] or implement[ing] a categorical coverage exclusion or limitation for all health services related to gender transition or other gender-affirming care." *Id.* § 92.207(b)(3)-(4).

**2.** Plaintiffs are the State of Florida, the Florida Agency for Health Care Administration, the Florida Department of Management Services, and the Catholic

Medical Association (CMA), which is an association of Catholic healthcare providers that brought suit on behalf of its members. Dkt. No. 1, at 7-9, ¶¶ 17-21. Plaintiffs challenged the 2024 Rule's treatment of gender-identity discrimination, alleging that they are harmed by the Rule because Florida has promulgated state laws "restricting gender-change interventions and separating facilities based on sex," *id.* at 50, ¶ 174, and that CMA members "hold the categorical position that providing, facilitating, referring for, or endorsing gender-transition efforts violates their core religious beliefs," *id.* at 57, ¶ 194. Plaintiffs sought a preliminary injunction and a stay of the Rule's effective date, a permanent injunction barring enforcement of the Rule's treatment of gender-identity discrimination, and declaratory relief. *Id.* at 81-82.

On July 3, 2024, the district court granted the Florida plaintiffs preliminary injunctive relief and a stay of the challenged provisions of the Rule within Florida. Dkt. No. 41, at 49-50. The preliminary injunction barred HHS from "instituting or pursuing any enforcement proceedings under Section 1557, 42 U.S.C. § 18116(a), based on the interpretation of discrimination 'on the basis of sex' to be codified at 45 C.F.R. § 92.101(a)(2)(iv), 92.206(b), or 92.207(b)(3)-(5)." *Id.* at 49. However, the district court denied CMA's request for preliminary injunctive relief as to its members. *Id.* at 47-48. Defendants appealed, and CMA cross-appealed. Dkt. Nos. 46, 52.

Following the election of President Trump, the district court stayed proceedings, Dkt. No. 50, and ordered the parties to file updates of their "view of the present status before this District Court," Dkt. No. 58. The court specifically directed the parties to

"[c]onsider . . . the likelihood of mootness given a pending change in administration." *Id.* Plaintiffs filed a response stating that "[t]he incoming administration is unlikely to share the current administration's peculiar enthusiasm for promoting 'gender transition' drugs and procedures or requiring that males be allowed into female private spaces. It may move to repeal the regulations challenged here. But that will take time." Dkt. No. 60, at 2. Defendants filed a response stating that "[a]t this time, Defendants cannot speculate about possible future actions by policymakers after the upcoming change in Presidential administration." Dkt. No. 61, at 2. On December 13, 2024, the district court issued an order administratively closing the case but noting that "[a]ny party may reopen at any time by filing a motion." Dkt. No. 62.

**3.** In January 2025, President Trump issued two executive orders that are relevant here. The first executive order, entitled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," states that the prior administration's position that Title IX "requires gender identity-based access to single-sex spaces" is "legally untenable." Exec. Order No. 14,168, 90 Fed. Reg. 8615, 8616 (Jan. 30, 2025) (*Defending Women* executive order). That order states that "[i]t is the policy of the United States to recognize two sexes, male and female." *Id.* at 8615. And "'[s]ex' shall refer to an individual's immutable biological classification as either male or female." *Id.* The second executive order, entitled "Protecting Children from Chemical and Surgical Mutilation," states that "it is the policy of the United States that it will not fund, sponsor, promote, assist, or support

the so-called 'transition' of a child from one sex to another." Exec. Order No. 14,187, 90 Fed. Reg. 8771, 8771 (Feb. 3, 2025) (*Protecting Children* executive order). That order directs the Secretary of HHS to "take all appropriate actions to end the chemical and surgical mutilation of children, including regulatory and sub-regulatory actions, which may involve . . . section 1557." *Id.* at 8772. In response, the Secretary of HHS issued "guidance expanding on the sex-based definitions set forth in" the *Defending Women* executive order. *See* 90 Fed. Reg. at 8616; Off. on Women's Health, HHS, *Sex-Based Definitions.*[2]

In light of the executive orders, the government moved to dismiss its appeal, and CMA moved to dismiss its cross-appeal. This Court granted those motions on April 3, 2025. Dkt. No. 70, at 2-3. On April 9, 2025, the district court issued an order stating, "[u]pon consideration of the Eleventh Circuit's Order of Dismissal and Mandate, the Clerk is directed to lift the stay and convert the administrative closure into a full closure." Dkt. No. 71.

Plaintiffs then moved to reopen the case and to clarify the effect of the district court's April 9 order. Dkt. No. 73. The district court ordered defendants to "file an update on the status." Dkt. No. 74. Defendants filed a status update suggesting that this case had become moot: "As this Court predicted, *see* ECF No. 58, [the *Defending Women* and *Protecting Children*] Executive Orders have already had justiciability

---

[2] https://perma.cc/H7XX-RHX3.

implications for this action." Dkt. No. 75, at 6. Defendants explained that, in light of the executive orders, "Plaintiffs and their members face no credible threat of any . . . enforcement action by Defendants, even setting aside the several injunctions and stays of enforcement issued by this Court and others." *Id.*

On June 5, 2025, the district court issued an order denying plaintiffs' motion to reopen the case, stating that "[t]here is no case or controversy presently pending." Dkt. No. 76. Plaintiffs appealed the next day. Dkt. No. 77; *Florida v. HHS*, No. 25-11927 (11th Cir.). On June 9, 2025, the district court issued an order dismissing the case "without prejudice as moot and not capable of repetition within any reasonable time frame." Dkt. No. 79. On June 16, 2025, plaintiffs filed the instant appeal.

**4.** On July 2, 2025, this Court issued an order in plaintiffs' first appeal directing the parties to advise the court of their position regarding jurisdiction and whether the district court's June 5 order stating that "[t]here is no case or controversy presently pending," Dkt. No. 76, is a final or otherwise appealable judgment. Jurisdictional Question, *Florida*, No. 25-11927 (July 2, 2025), Dkt. No. 18-2. On October 2, 2025, this Court dismissed plaintiffs' first appeal, concluding that there was not a final, appealable order at the time plaintiffs filed their first appeal challenging the district court's June 5 order. Dkt. No. 84, at 3-4. This Court explained that "[t]he district court's entry of the June 9 order dismissing the pending claims indicated that the court intended for the June 9 order—rather than the June 5 order—to end the litigation on the merits and serve as the final action in the case." *Id.* at 4.

7

**B.     Related Litigation**

There have been several other challenges to the 2024 Rule.  In *Tennessee v. Becerra*, the district court granted a nationwide preliminary injunction and a nationwide stay under 5 U.S.C. § 705 of a list of challenged provisions with respect to gender identity. *Tennessee v. Becerra*, 739 F. Supp. 3d 467, 485 (S.D. Miss. 2024).  The government appealed but voluntarily dismissed its appeal after the change in administration.  *See Tennessee v. Kennedy*, No. 24-60462 (5th Cir. dismissed Mar. 12, 2025).  On October 22, 2025, the district court in *Tennessee* granted summary judgment to plaintiffs.  *Tennessee v. Kennedy*, No. 1:24-cv-161, 2025 WL 2982069, at *13 (S.D. Miss. Oct. 22, 2025).  The court universally vacated various provisions of the Rule related to gender-identity discrimination and issued a declaratory judgment declaring that "HHS exceeded its statutory authority when (1) it interpreted Title IX, as incorporated into Section 1557, to prohibit discrimination on the basis of gender identity, and (2) when it implemented Section 1557 regulations concerning gender identity and 'gender affirming care.'"  *Id.* Defendants did not appeal, and the time to appeal has expired.  *See* Fed. R. App. P. 4(a)(1)(B).

In *Texas v. Becerra*, the district court issued a nationwide stay under 5 U.S.C. § 705 as to the challenged provisions of the Rule involving gender identity.  *Texas v. Becerra*, 739 F. Supp. 3d 522, 541 (E.D. Tex. 2024), *modified on reconsideration,* No. 6:24-cv-211, 2024 WL 4490621 (E.D. Tex. Aug. 30, 2024).  The government appealed but voluntarily dismissed its appeal after the change in administration.  *Texas v. Kennedy*, No. 24-40568

(5th Cir. dismissed Mar. 17, 2025). The *Texas* district court stayed the case, and the district court's 5 U.S.C. § 705 stay remains in effect. *See Texas v. Becerra*, No. 6:24-cv-211, Dkt. Nos. 52, 53.

In *Catholic Benefits Ass'n v. Becerra*, the district court granted the plaintiff's motion for summary judgment on its claims under the Religious Freedom Restoration Act with "respect to the 2024 Rule's extension of discrimination on the basis of sex to discrimination on the basis of gender identity." No. 3:23-cv-203 (D.N.D.), Dkt. No. 78, at 17. The parties filed motions to amend the court's order, which remain pending. No. 3:23-cv-203 (D.N.D.), Dkt. Nos. 78, 80, 81.

In *McComb Children's Clinic, Ltd. v. Fink*, the district court ordered the parties to show cause as to why the case should not be dismissed as moot. No. 5:24-cv-48 (S.D. Miss.), Dkt. No. 60. The court noted the *Tennessee v. Kennedy* district court's order vacating relevant portions of the 2024 Rule and explained that "[i]t is unclear what relief the Court would be able to grant Plaintiffs now that portions of the Rule that prohibited gender-identity discrimination have been vacated." *Id.* at 3. The government's response explained that this case is moot because there is no live Article III case or controversy between the parties given the *Tennessee* court's nationwide vacatur. No. 5:24-cv-48, Dkt. No. 62, at 1.

Finally, a challenge to the 2024 Rule remains pending in *Missouri v. Becerra*, No. 4:24-cv-937 (E.D. Mo. filed July 10, 2024) (awaiting scheduling order).

### C. Standard of Review

This Court reviews the district court's dismissal for lack of jurisdiction de novo. *Purpose Built Fams. Found., Inc. v. United States*, 95 F.4th 1346, 1351 (11th Cir. 2024).

## SUMMARY OF ARGUMENT

This case is moot. Plaintiffs challenged the 2024 Rule's definition of sex discrimination as including gender-identity discrimination and sought to vacate the relevant provisions of the Rule and enjoin HHS from enforcing the Rule against them. But President Trump has issued two executive orders expressly disavowing the provisions of the 2024 Rule with respect to gender-identity discrimination that plaintiffs challenged, and another district court has universally vacated those provisions. *Tennessee v. Kennedy*, No. 1:24-cv-161, 2025 WL 2982069 (S.D. Miss. Oct. 22, 2025). The government has not appealed the universal vacatur of the Rule in *Tennessee*, and the time to appeal has now expired. As a result, there can be no doubt that plaintiffs face no credible threat of enforcement under the Rule, and there is no effectual relief that a court could order. Because this case no longer presents a live controversy under Article III, the district court's order dismissing this case as moot should be affirmed.

Plaintiffs' arguments that the district court erred in dismissing this case as moot focus less on whether any live controversy still exists in this case and more on supposed procedural improprieties by the district court. *See* Pls.' Br. 34-40 (arguing that district court's dismissal violated due process). But the court had an independent

obligation to assess its jurisdiction at all stages of this case, and it properly discharged that obligation here. The court correctly recognized that, after the change in administration and the issuance of the executive orders expressly repudiating the gender-identity provisions in the 2024 Rule, plaintiffs no longer faced any credible threat of enforcement under the Rule and there was no effectual relief it could order. Subsequent events, including the universal vacatur of the Rule's gender-identity provisions in *Tennessee*, have only underscored the correctness of the court's mootness determination. In any event, even if the court erred in its assessment of mootness at the time or erred in the way it dismissed this case, those errors were harmless as this case is now plainly moot. This Court should accordingly affirm the district court's judgment.

## ARGUMENT

## THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S DISMISSAL ON MOOTNESS GROUNDS

### A. Plaintiffs' Challenge to the 2024 Rule Is Moot.

In May of 2024, plaintiffs sought prospective relief barring enforcement of the 2024 Rule interpreting Section 1557's prohibition on sex discrimination to include gender-identity discrimination and vacating the Rule under the Administrative Procedure Act. Plaintiffs claimed that the Rule "threaten[s] the livelihood of doctors who refuse to provide . . . 'gender-change' interventions" and that "HHS further threatens the loss of federal funds for States and insurance issuers that refuse to cover

these interventions." Dkt. No. 1, at 1-2, ¶ 1. Plaintiffs' complaint stated that they brought "this action to stop HHS's interference with the ethical practice of medicine and state police powers." *Id.* at 2, ¶ 1.

None of the injuries that plaintiffs asserted in 2024 remains live.[3] Now that the administration has changed and the executive orders have made clear that the Rule's position on gender-identity discrimination is "legally untenable," 90 Fed. Reg. at 8616, "the issues presented are no longer live" and the case is thus moot. *BankWest, Inc. v. Baker*, 446 F.3d 1358, 1364 (11th Cir. 2006) (per curiam). Moreover, as noted, the gender-identity provisions challenged by plaintiffs have been universally vacated in a final judgment issued by a district court in *Tennessee v. Kennedy*, No. 1:24-cv-161, 2025 WL 2982069 (S.D. Miss. Oct. 22, 2025), and the time to appeal has now expired. In light of these changed circumstances, neither this Court nor the district court could "grant *any* effectual relief" to plaintiffs. *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

As the Supreme Court has recognized, a case becomes moot when it "no longer present[s] a case or controversy under Article III, § 2, of the Constitution." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). "This case-or-controversy requirement subsists through

_____

[3] Oddly, plaintiffs devote a considerable portion of their opening brief (Pls.' Br. 40-47) arguing that they had standing to challenge to the 2024 Rule at the time they filed their complaint. But the government never challenged plaintiffs' standing in opposing plaintiffs' motion for a preliminary injunction, and it is irrelevant to the question whether plaintiffs face any credible prospect of future injury at this juncture sufficient to establish an ongoing case or controversy under Article III.

all stages of federal judicial proceedings, trial and appellate." *Id.* (citation omitted). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). As this Court has recognized, "[i]f events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff . . . meaningful relief, then the case is moot and must be dismissed." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (per curiam) (citing *Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam)).

This case no longer presents a case or controversy under Article III because it is "unambiguous[]" that the Rule's provisions on gender-identity discrimination are no longer in effect. *Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir. 2022) (quoting *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1285 (11th Cir. 2004)). Plaintiffs challenged the Rule's treatment of gender-identity discrimination and opposed the provision of "gender-change interventions." Dkt. No. 1, at 50, ¶ 174. Plaintiffs sought vacatur of the Rule's treatment of gender-identity discrimination and injunctive relief "enjoining Defendants from enforcing the 2024 Rule[]." *Id.* at 81. Plaintiffs also sought a declaration that defendants "may not require covered entities to" "[p]erform . . . 'gender transition' interventions" or "[a]llow members of one sex into the healthcare programs or private spaces of the other sex in their facilities, such as by allowing males into female restrooms." *Id.* at 82.

As the district court recognized in dismissing the case as moot, there is no longer a live case or controversy between the parties. On his first day in office, the President issued the *Defending Women* executive order, which states that "[i]t is the policy of the United States to recognize two sexes, male and female" and that "[t]hese sexes are not changeable." 90 Fed. Reg. at 8615. The executive order further states that "'[s]ex' shall refer to an individual's immutable biological classification as either male or female" and that "'[s]ex' is not a synonym for and does not include the concept of 'gender identity.'" *Id.* It also directs "[e]ach agency and all Federal employees" to "enforce laws governing sex-based rights" "to protect men and women as biologically distinct sexes." *Id.* at 8616. The executive order directed the Secretary of HHS to provide "clear guidance expanding on the sex-based definitions set forth in this order." *Id.* The Secretary of HHS has thus issued guidance stating that "[a] person's sex is unchangeable and determined by objective biology" and that "[r]ecognizing the immutable and biological nature of sex is essential to ensure the protection of women's health, safety, private spaces, sports, and opportunities." Off. on Women's Health, HHS, *Sex-Based Definitions*, *supra*.

The President also issued the *Protecting Children* executive order, which states that "it is the policy of the United States that it will not fund, sponsor, promote, assist, or support the so-called 'transition' of a child from one sex to another." 90 Fed. Reg. at 8771. The executive order directs the Secretary of HHS to "take all appropriate actions

to end the chemical and surgical mutilation of children, including regulatory and sub-regulatory actions, which may involve . . . section 1557." *Id.* at 8772.

In light of the government's change in position, as reflected in the executive orders, there are no longer any live issues to litigate, as there is no "actual controversy about the plaintiffs' particular legal rights." *Already*, 568 U.S. at 91. Plaintiffs sought a declaration that defendants "may not require covered entities to" "[p]erform . . . 'gender transition' interventions" or "[a]llow members of one sex into the healthcare programs or private spaces of the other sex in their facilities, such as by allowing males into female restrooms," Dkt. No. 1, at 82, but the executive orders make clear that defendants will not require covered entities to take either of these actions that plaintiffs fear. Plaintiffs also sought vacatur of the Rule's treatment of gender-identity discrimination and injunctive relief "enjoining Defendants from enforcing the 2024 Rule[]," *id.* at 81, but the executive orders make clear that the Rule's provisions on gender-identity discrimination will not be enforced in the ways plaintiffs fear. Plaintiffs alleged that they brought "this action to stop HHS's interference with the ethical practice of medicine and state police powers," *id.* at 2, ¶ 1, but the executive orders make clear that defendants now agree with plaintiffs' position on sex-change procedures and thus will not interfere in the way plaintiffs fear. Accordingly, this case is moot.

The lack of any live controversy is particularly obvious in light of the final judgment in *Tennessee*, which universally vacated the provisions of the Rule related to gender-identity discrimination that plaintiffs challenge here and issued a declaratory

15

judgment declaring that "HHS exceeded its statutory authority when (1) it interpreted Title IX, as incorporated into Section 1557, to prohibit discrimination on the basis of gender identity, and (2) when it implemented Section 1557 regulations concerning gender identity and 'gender affirming care.'" 2025 WL 2982069, at \*13; *see also Moore v. La. Bd of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014) (dismissing as moot challenge to statutory provision where another court invalidated the provision in another case brought by different plaintiffs).

Consistent with the President's executive orders, defendants did not appeal the final judgment in *Tennessee*, and the time to appeal has now expired. *See* Fed. R. App. P. 4(a)(1)(B). Plaintiffs' challenge to the Rule here is accordingly moot, an issue at least one other district court has recognized. *See McComb Child.'s Clinic, Ltd. v. Fink*, No. 5:24-cv-48 (S.D. Miss.), Dkt. No. 60 (ordering the parties to show cause as to why the challenge to HHS's 2024 Rule should not be dismissed as moot and noting that in light of the *Tennessee* order, "[i]t is unclear what relief the Court would be able to grant Plaintiffs now that portions of the Rule that prohibited gender-identity discrimination have been vacated"); *McComb Child.'s Clinic, Ltd. v. Fink*, No. 5:24-cv-48 (S.D. Miss.), Dkt. No. 62, at 1 (government explaining that this case is moot because there is no live Article III case or controversy between the parties given the *Tennessee* court's nationwide vacatur).

**B.    Plaintiffs' Arguments That the District Court Erred in Dismissing This Case as Moot Lack Merit, and Any Such Errors Would Be Harmless In Any Event Because the Case Is Now Plainly Moot.**

Plaintiffs' cursory contention that this case remains live (Pls.' Br. 51-58) lacks merit, and their challenge to the way the district court determined that this case was moot (Pls.' Br. 34-40) is equally unavailing.  The district court properly recognized that, after the change in administration and the issuance of executive orders expressly repudiating the gender-identity provisions in the 2024 Rule, plaintiffs no longer faced any credible threat of enforcement under the Rule, and there was no effectual relief it could order.  Moreover, even if the court erred by dismissing this case on mootness grounds, in the manner or at the time that it did, any such errors would be harmless because this case is now plainly moot given the universal vacatur of the Rule's gender-identity provisions in *Tennessee*.

**1.**  Plaintiffs' arguments that this case remains live notwithstanding the universal vacatur of the gender-identity provisions in *Tennessee*, Pls.' Br. 51-58, lack merit.  Among other things, plaintiffs argue that the case "remains live because the partial vacatur may be overturned on appeal or reopened."  Pls.' Br. 52.  But that is no longer true.  The time to appeal has expired, *see* Fed. R. App. P. 4(a)(1)(B), and plaintiffs' unsupported speculation that "the United States could possibly move for relief from the final judgment," Pls.' Br. 52, does not show that there is a live case or controversy required by Article III.

Plaintiffs' reliance on *Alabama v. U.S. Secretary of Education*, No. 24-12444, 2024 WL 3981994 (11th Cir. Aug. 22, 2024), is similarly flawed. That case involved a challenge to a similar rule issued by the Department of Education under Title IX and the nationwide vacatur of that rule by a separate district court. As plaintiffs recognize, the government agreed that "Alabama's challenge was not moot because a third party sought to intervene to appeal the district court's final judgment." Pls.' Br. 53. But there are no intervenors in the *Tennessee* case, so there is no prospect that the nationwide vacatur of the 2024 Rule will be overturned. Given the obvious procedural differences between this case and *Alabama*, plaintiffs err in suggesting that there is any inconsistency between the government's position in that case and here.

Next, plaintiffs argue (Pls.' Br. 53) that this case remains live because they sought a broader vacatur of the 2024 Rule than the relief granted in *Tennessee*. That is not correct. Although the *Tennessee* court vacated 45 C.F. R. § 92.101(a)(2)(iv), which prohibited discrimination based on gender identity, it did not vacate 45 C.F. R. § 92.101(a)(2)(i) and (v), which prohibit discrimination based on "sex characteristics" or "sex stereotypes." Pls.' Br. 53. But plaintiffs in this case did not challenge 45 C.F.R. § 92.101(a)(2)(i) and (v) in their complaint. *See, e.g.*, Dkt. No. 1 at 12, ¶ 37 ("Section 1557 does not reference . . . gender identity"); *id.* at 56, ¶ 186 ("The [Rule] require[s] covered entities to provide an updated notice of nondiscrimination to patients stating that they will not discriminate on the basis of gender identity."); *id.* at 56-57, ¶ 190 ("Every time a covered entity requests a federal health funding payment

from HHS, it impliedly certifies to HHS that it follows governing regulations, and the [Rule] import[s] the prohibition on gender identity discrimination into those implied certifications."); *id.* at 65, ¶ 225 ("discriminating based on gender identity is not necessarily prohibited discrimination based on sex"); *id.* at 72, ¶ 254 ("At the time that the ACA was passed in 2010, no federal courts or agencies interpreted 'based on sex' in Title IX to include discrimination based on gender identity."); *id.* at 73, ¶ 264 ("Section 1557 doesn't protect against "gender identity" discrimination."); *id.* at 82 (seeking a declaratory judgment that defendant "may not require covered entities to" "[m]ake statements in their policies . . . to the effect that the entity will not discriminate on the basis of gender identity.").  Indeed, in granting Florida's request for a stay and preliminary injunctive relief, the district court granted Florida relief as to 45 C.F.R. § 92.101(a)(2)(iv) (gender identity), but not as to 45 C.F.R. § 92.101(a)(2)(i) (sex characteristics) or (v) (sex stereotypes), Dkt. No. 41, at 49, and Florida did not seek further relief in district court.  Courts "decline to revive [a moot] case by reading into [a plaintiff's] complaint an argument not adequately presented."  *See Larsen v. U.S. Navy*, 525 F.3d 1, 5 (D.C. Cir. 2008); *see also Regalado v. Dir., Ctr for Disease Control*, 2023 WL 2399989, at *1 (11th Cir. Jan. 18, 2023) (rejecting plaintiff's "shift to rely on" a different agency statement as not "salvag[ing]" case from mootness).

Similarly, plaintiffs contend that a live case or controversy remains despite the *Tennessee* court's vacatur of the relevant parts of the Rule because plaintiffs claim they challenge the Rule "on the basis that it unlawfully purports to prohibit disparate

impacts." Pls.' Br. 55.  But it is not clear from plaintiffs' complaint that they challenged the Rule on this basis.  And in any event, it makes no difference whether the plaintiffs here challenged the rule on the same or different grounds as the plaintiffs in *Tennessee*—the Rule has been vacated in relevant part and thus lacks any legal force or effect.

Plaintiffs also argue that the case is not moot because they seek a declaration "that under any theory of Section 1557 and Title IX, [HHS] may not require covered entities to" have policies of "allowing males into female restrooms" or "say[ing] that men can get pregnant and give birth."  Pls.' Br. 55-56 (alterations in original) (quotations omitted).  Plaintiffs contend that "[i]f granted, this relief would go beyond vacatur of the Final Rule to prevent HHS from ever using Section 1557 in this manner against Plaintiffs, affording Plaintiffs durable relief against the whiplash of HHS's regulatory pendulum."  Pls.' Br. 56.  But plaintiffs' bare desire for a declaration to protect them against hypothetical future interpretations of the prohibition on sex discrimination in Section 1557, and possible future enforcement actions by a different administration at some point in the future, is insufficient to maintain a live case or controversy.  *See BankWest*, 446 F.3d at 1367 (concluding that challenge to loan programs was moot and explaining that "[t]he precise nature of the new but different loan programs and the manner in which they are to be administered . . . remain far too speculative and abstract at this juncture to create an actual case or controversy."); *Flanigan's Enters., Inc. v. City of Sandy Springs*, 868 F.3d 1248, 1268 (11th Cir. 2017)

("[B]ecause the federal courts have no jurisdiction over a case that does not involve an Article III case or controversy, a prayer for declaratory relief is insufficient to save an otherwise moot case.").

Finally, plaintiffs argue that this case is not moot because they also asserted claims under the Spending Clause, the First Amendment, and Religious Freedom Restoration Act (RFRA). Pls.' Br. 57-58. Plaintiffs contend that RFRA claims challenge burdens placed on religious conduct, rather than a particular regulation. Pls.' Br. 57. But plaintiffs do not explain how the religious exercise of CMA's members is being substantially burdened by the government in light of the executive orders, the *Tennessee* court's vacatur, and the lack of any history of enforcement or credible threat of enforcement. *See Arzamendi v. Hegseth*, No. 24-10557, 2025 WL 2978447, at *4 (5th Cir. Oct. 22, 2025), *petition for reh'g filed* (Dec. 8, 2025) (declining to consider plaintiffs' RFRA claims challenging COVID-19 mitigation measures where "[o]n appeal, . . . [the] Plaintiffs do not meaningfully address the district court's dismissal of their RFRA claims"). And plaintiffs do not develop any argument as to why there is a live case or controversy for their Spending Clause or First Amendment claims. *City of Waukesha v. EPA*, 320 F.3d 228, 250 n.22 (D.C. Cir. 2003) (argument raised "only summarily, without explanation or reasoning" is forfeited).

**2.** Unable to identify any live claims or effectual relief that a court could order in light of the universal vacatur of the gender-identity provisions of the 2024 Rule and the executive orders expressly disavowing those provisions, plaintiffs instead devote the

bulk of their brief to arguing that the timing and manner in which the district court dismissed this case was erroneous. Those arguments lack merit, but even if they did not, this Court should affirm the dismissal on mootness grounds because any such errors would be harmless since this case is now plainly moot.

Plaintiffs first argue (Pls.' Br. 34-40) that the district court's dismissal of the case as moot violated due process. But plaintiffs acknowledge that "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). *See* Pls.' Br. 34. This "independent obligation" exists, "even in the absence of a challenge from any party," *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006), and it applies to mootness, as well as other jurisdictional issues. *See United States v. Williams*, 475 F.3d 468, 479 (2d Cir. 2007) (*sua sponte* concluding that appeal was moot despite mootness not being briefed by the parties, and explaining that, "[w]hile the Government has failed to argue that [the] appeal should be dismissed as moot, we have an independent obligation to ensure that developments in the case have not rendered the appeal moot"). As this Court has explained, "'every federal court operates under an independent obligation to ensure it is presented with the kind of concrete controversy upon which its constitutional grant of authority is based; and this obligation on the court to examine its own jurisdiction continues at each stage of the proceedings, even if no party raises the jurisdictional issue and both parties are prepared to concede it.'"

*Bischoff v. Osceola County*, 222 F.3d 874, 878 (11th Cir. 2000) (quoting *Cuban Am. Bar Ass'n v. Christopher*, 43 F.3d 1412, 1422 (11th Cir. 1995)).

Plaintiffs rely principally on *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 271 (2015), but that decision does not demonstrate that the district court erred in dismissing this case as moot. In *Alabama*, the Supreme Court explained that, "*under the circumstances at issue*, the evidence in the record was 'strong enough to lead the [plaintiff] reasonably to believe' that it satisfied a requirement of standing and the defendant failed to argue otherwise, so 'elementary principles of procedural fairness' required the district court to provide notice and an opportunity to respond before deciding *sua sponte* that the plaintiff had not satisfied that requirement." *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1285-86 (11th Cir. 2019) (per curiam) (alteration in original) (emphasis added) (quoting *Alabama*, 575 U.S. at 271), *reh'g denied en banc*, 956 F.3d 1319 (11th Cir. 2020). That case does "not purport to speak to circumstances like those of this appeal, in which the opposing party raised the issue" of jurisdiction. *Id.* at 1286.

Here, plaintiffs received "repeated notice" that mootness was at issue from "both the district court and [defendants]." *City of Miami Gardens v. Wells Fargo & Co.*, 956 F.3d 1319, 1323 (11th Cir. 2020) (en banc) (Pryor, J., respecting the denial of rehearing en banc). First, the district court ordered the parties to file updates discussing "the likelihood of mootness given a pending change in administration." Dkt. No. 58. Plaintiffs filed a response acknowledging that "[t]he incoming administration is unlikely to share the current administration's peculiar enthusiasm for promoting 'gender

transition' drugs and procedures or requiring that males be allowed into female private spaces," and that "[i]t may move to repeal the regulations challenged here." Dkt. No. 60, at 2.

Second, after the issuance of the two executive orders setting forth the government's position on gender identity and sex-change procedures, defendants filed a status update suggesting that this case had become moot: "As this Court predicted, *see* ECF No. 58, [the *Defending Women* and *Protecting Children*] Executive Orders have already had justiciability implications for this action." Dkt. No. 75, at 6. Defendants explained that, in light of the executive orders, "Plaintiffs and their members face no credible threat of any . . . enforcement action by Defendants, even setting aside the several injunctions and stays of enforcement issued by this Court and others." *Id.* Defendants further stated that "Defendants are committed to implementing the President's Executive Orders, which reflect policies not unaligned with those of Plaintiffs." *Id.* Accordingly, plaintiffs had ample notice that the government was challenging the existence of a continuing case or controversy between the parties.

Plaintiffs contend that because "the district court had already preliminarily concluded that Plaintiffs had standing," they reasonably believed that they did not need to provide additional information. Pls.' Br. 37-38. But this argument conflates standing and mootness, which are two separate jurisdictional issues. The district court's conclusion in its preliminary injunction decision that plaintiffs had standing at the time the action commenced has no bearing on whether intervening events rendered the case

moot. *See BankWest*, 446 F.3d at 1364. Indeed, as noted above, *supra* note 3, the government did not challenge plaintiffs' initial standing to challenge the 2024 Rule. However, the existence of standing at the outset of a case does not insulate claims from mootness when there are significant changes to the regulatory landscape, such as the change in administration, the executive orders disavowing the gender-identity provisions in the 2024 Rule, and a later judgment vacating those provisions.

Moreover, plaintiffs had an opportunity "on appeal to explain how" the case is not moot, *see supra* pp. 11-21, and plaintiffs "came up short." *City of Miami Gardens*, 956 F.3d at 1324 (Pryor, J., respecting the denial of rehearing en banc). In *Alabama*, the Supreme Court explained that "because of the evidence the plaintiff proffered to the Supreme Court, it had 'no reason to believe that the [plaintiff] would have been unable to provide [evidence to establish jurisdiction].'" *Id.* (first alteration in original) (quoting *Alabama*, 575 U.S. at 271). In contrast, plaintiffs here have not provided any reason to believe that additional briefing on mootness before the district court would have changed the outcome of this case. The executive orders and subsequent vacatur of the challenged Rule unequivocally show that there is no Article III case or controversy left between the parties, and thus the jurisdictional defect is "clearly incurable." *Frey v. EPA*, 270 F.3d 1129, 1132 (7th Cir. 2001).

Plaintiffs briefly suggest that they "may even be entitled to an evidentiary hearing to the extent mootness raises questions of witness credibility," Pls.' Br. 38, but they do not develop this argument or make clear what "disputed material facts . . . implicating

questions of credibility" they are challenging or whose credibility they are calling into question.  To the extent plaintiffs are suggesting that they are entitled to an evidentiary hearing to probe whether HHS will follow the *Defending Women* executive order's direction for "[e]ach agency" to "enforce laws governing sex-based rights" "to protect men and women as biologically distinct sexes," 90 Fed. Reg. at 8616, that is incorrect. "[T]he presumption of regularity supports the official acts of public officers, and courts presume that they have properly discharged their official duties" "[w]here no evidence indicating otherwise is produced."  *United States v. Garcia*, 718 F.2d 1528, 1534 (11th Cir. 1983).  Plaintiffs have not identified any reason to believe that HHS will not adhere to the President's orders.  In any event, the Rule has now been vacated in relevant respects and thus lacks any legal effect.  Plaintiffs offer no explanation for how an evidentiary hearing would be relevant to evaluating the mooting effect of that change in legal landscape.

The other cases plaintiffs cite (Pls.' Br. 38) are similarly inapposite.  In *Reynolds v. Army & Air Force Exchange Service*, there was a factual dispute about an allegation in the complaint related to Tucker Act jurisdiction, and the Federal Circuit remanded the case "[b]ecause of our inability to determine if [the plaintiff] was afforded an opportunity to establish the jurisdictional facts before dismissal, and because the sole support for the district court's decision is its clearly erroneous fact finding."  846 F.2d 746, 748 (Fed. Cir. 1988).  In *Ho v. Russi*, the Ninth Circuit concluded that the district court's discretionary decision to decline supplemental jurisdiction was not a dismissal for lack

26

of jurisdiction and that the district court was required to provide notice and an opportunity to be heard. 45 F.4th 1083, 1085-86 (9th Cir. 2022). In *Frey*, the district court did not provide "any notice to the plaintiffs that it was considering" dismissing the case for lack of jurisdiction, and the Seventh Circuit noted that "*unless the defect is clearly incurable*[,] a district court should grant the plaintiff leave to amend, allow the parties to argue the jurisdictional issue, or provide the plaintiff with the opportunity to discover the facts necessary to establish jurisdiction." 270 F.3d at 1132 (emphasis added). And in *Neiderhiser v. Borough of Berwick*, the Third Circuit declined to remand for district court briefing on whether a live controversy existed between the parties. 840 F.2d 213, 216 n.6 (3d Cir. 1988).

This case does not present any notice difficulties of the type or magnitude at issue in the cases on which plaintiffs rely. As explained above, plaintiffs had ample notice of the mootness issue from both the district court and the government. Moreover, unlike in *Frey*, the executive orders and the universal vacatur of the relevant portions of the Rule in *Tennessee* unequivocally show that there is no Article III case or controversy left between the parties, and thus the jurisdictional defect is "clearly incurable." *Frey*, 270 F.3d at 1132. In these circumstances, there is plainly no need for additional proceedings on mootness; instead this Court should simply address the mootness issue rather than ordering a pointless remand for district court briefing on whether a live controversy exists between the parties.

Finally, even if plaintiffs were correct that they lacked adequate notice and an opportunity to be heard in district court, plaintiffs had an opportunity to brief the mootness issue on appeal. They have now done so, and we have explained (*supra* pp. 11-21) why this Court should reject their arguments that a live controversy persists. Thus, regardless of precisely how mootness was discussed and adjudicated in district court, there can be no doubt that plaintiffs have now been fully heard on this issue. As explained above, the case is now indisputably moot in light of the *Tennessee* court's vacatur, and this Court should accordingly affirm the district court's dismissal on that basis. *See Soliman v. U.S. ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002) (per curiam) (explaining that where subsequent events "deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed.").

**3.** In addition to arguing that the district court failed to give them adequate notice and an opportunity to be heard on the mootness issue, plaintiffs contend (Pls.' Br. 47-51) that the case was live when the district court dismissed it. That is incorrect, but even if the court prematurely dismissed on mootness grounds, that error was harmless because this case is now plainly moot in light of the *Tennessee* court's vacatur.

Plaintiffs primarily argue that the case was not moot at the time the district court dismissed it because the executive orders did not "commit HHS to not enforcing the Final Rule." Pls.' Br. 48. But the *Defending Women* executive order makes clear that the Rule's treatment of gender identity—which is what plaintiffs challenge—is "legally untenable." 90 Fed. Reg. at 8616. That executive order also directs "[e]ach agency and

all Federal employees" to "enforce laws governing sex-based rights" "to protect men and women as biologically distinct sexes." *Id.* Plaintiffs have provided no reason to believe that they faced a credible threat of enforcement under the Rule at the time the district court dismissed it, and that is even more clear now in light of the *Tennessee* court's vacatur.

Plaintiffs contend that they still need a final judgment because they are obligated to file assurances of compliance with the Final Rule to receive federal funds. Pls.' Br. 48. Plaintiffs claim that "if covered entities say they will comply with the Final Rule, but do not mean it, they risked civil liability under the False Claims Act." *Id.* As an initial matter, now that the relevant provisions of the Rule have been vacated by the *Tennessee* court, CMA's members would not need to certify compliance with those provisions, and there is no plausible threat of False Claims Act liability on the grounds plaintiffs fear.

In any event, plaintiffs contend that Florida and its agencies are not subject to the False Claims Act. Pls.' Br. 48 n.3 (citing *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 788 (2000)). And given the executive orders, plaintiffs have not shown that CMA's members faced any credible threat of False Claims Act liability at the time the district court dismissed the suit. Given the government's changed position on these issues, there is no prospect of a False Claims Act suit brought by the United States. And even if a private relator were to bring claims under the False Claims Act against one of CMA's members, the government could intervene and dismiss the

suit over relator's objections. *See* 31 U.S.C. § 3730(c)(2)(A) (providing the government with authority to "dismiss [a *qui tam*] action notwithstanding the objections of the [relator] if the [relator] has been notified by the Government of the filing of the motion and the court has provided the [relator] with an opportunity for a hearing on the motion"); *United States ex. rel Polansky v. Executive Health Res., Inc.*, 599 U.S. 419 (2023) (affirming plenary authority of the United States to dismiss *qui tam* actions). Such a suit would plainly be inconsistent with the government's stated position in the executive orders, so the prospect of False-Clams-Act liability, or even the threat of litigation by a relator, is speculative at best.

Next, plaintiffs claim that Florida faces continuing uncertainty about the validity of its laws. Pls.' Br. 49. But plaintiffs alleged in their complaint that they are harmed by the Rule because Florida has promulgated state laws "restricting gender-change interventions and separating facilities based on sex." Dkt. No. 1, at 50, ¶ 174. That allegation no longer identifies a cognizable injury because the *Defending Women* executive order clearly states that "[i]t is the policy of the United States to recognize two sexes, male and female" and that "[t]hese sexes are not changeable," 90 Fed. Reg. at 8615. It further states that the prior administration's position that Title IX "requires gender identity-based access to single-sex spaces" is "legally untenable." *Id.* at 8616. And the Secretary of HHS has issued guidance stating that "[a] person's sex is unchangeable and determined by objective biology" and that "[r]ecognizing the immutable and biological nature of sex is essential to ensure the protection of women's health, safety, private

spaces, sports, and opportunities." Off. on Women's Health, HHS, *Sex-Based Definitions*, *supra*. Finally, the *Tennessee* court's vacatur provides further clarity.

Plaintiffs also rely on *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1246 (11th Cir. 1998), and *FBI v. Fikre*, 601 U.S. 234, 239-43 (2024), Pls.' Br. 50-51, but neither case helps them. In *Socialist Workers Party*, the Court concluded that "a credible threat of application [of the challenged rule] remain[ed]" because the plaintiff had already faced multiple enforcement actions. 145 F.3d at 1246. Similarly, in *Fikre*, the plaintiff alleged that the government had placed him on the No Fly List "for constitutionally impermissible reasons, including his religious beliefs," and for attending a particular mosque. 601 U.S. at 242. The Supreme Court concluded that the government's representations that it will not relist the plaintiff based on "currently available information" did not "speak[] to whether the government might relist him if he does the same or similar things in the future." *Id.* In contrast, plaintiffs here do not allege the HHS has taken *any* enforcement action against them in the past—or any other covered entity that has declined to provide sex-change procedures—and they provide no reason to believe that HHS will take any enforcement action against them in the future. Indeed, given the universal vacatur of the Rule in *Tennessee*, HHS is legally barred from taking any enforcement action based on the gender-identity provisions of the Rule. As a result, plaintiffs face no credible threat of enforcement remotely akin to the circumstances presented in *Socialist Workers Party* or *Fikre*.

Finally, plaintiffs argue that "HHS's quadrennial about-faces on Section 1557" "should alone demonstrate the 'very real probability' of future enforcement." Pls.' Br. 50. But speculation about hypothetical future interpretations of the prohibition on sex discrimination in Section 1557 and hypothetical future enforcement actions at some uncertain time during a future administration cannot provide the requisite live case or controversy required by Article III. *See BankWest*, 446 F.3d at 1367 (concluding that challenge to loan programs was moot and explaining that "[t]he mere possibility of new loan programs is not sufficient to present a justiciable controversy").

**4.** In any event, even if the district court erred by dismissing this case on mootness grounds in the manner or at the time that it did, any such errors would be harmless because this case is now plainly moot given the universal vacatur of the Rule's gender-identity provisions in *Tennessee*. As this Court has explained, "[a] reviewing court must disregard as harmless error any error which does not affect the substantial rights of the parties." *EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 924 (11th Cir. 1990). Because the case is now moot in light of the *Tennessee* court's vacatur, this Court's continuing duty to assess its jurisdiction should obviate the need for a remand to engage in the futile exercise of rectifying procedural errors or correcting a premature determination of mootness. *See Soliman*, 296 F.3d at 1242 ("[I]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed.").

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's dismissal of this case as moot.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

CHARLES W. SCARBOROUGH

*s/ Ashley C. Honold*

ASHLEY C. HONOLD
*Attorneys, Appellate Staff*
*Civil Division, Room 7261*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-9018*
*ashley.c.honold@usdoj.gov*

January 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,567 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Ashley C. Honold*
Ashley C. Honold

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.


*s/ Ashley C. Honold*
Ashley C. Honold