# In The United States Court of Appeals
# For The Eleventh Circuit

---

**STATE OF FLORIDA, ET AL.,**

*Plaintiffs-Appellants,*

**v.**

**DEPARTMENT OF HEALTH AND
HUMAN SERVICES, ET AL.,**

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Middle District of Florida
Case No. 8:24-cv-01080-WFJ-TGW

---

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

---

James Uthmeier
  *Attorney General*
Jeffrey DeSousa
  *Acting Solicitor General*
Christine K. Pratt
  *Assistant Solicitor General*
FLORIDA OFFICE OF THE ATTORNEY
GENERAL
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
chistine.pratt@myfloridalegal.com

*Counsel for Plaintiff-Appellant
State of Florida*

*Additional counsel listed on next page*

James R. Conde
Nicholas Cordova
Walker Fortenberry
BOYDEN GRAY PLLC
800 Connecticut Ave NW,
Suite 900
Washington, DC 20006
202-955-0620
jconde@boydengray.com

*Lead Counsel for
Plaintiffs-Appellants Florida
Department of Management
Services and Florida Agency for
Health Care Administration*

Matthew S. Bowman
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 (fax)
mbowman@ADFlegal.org

Julie Marie Blake
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, Virginia 20176
(571) 707-4655
(571) 707-4790 (fax)
jblake@ADFlegal.org

David A. Cortman
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road NE,
Suite D1100
Lawrenceville, Georgia 30043
(770) 339-0774
(770) 339-6744 (fax)
dcortman@ADFlegal.org

*Counsel for Plaintiff-Appellant*
*Catholic Medical Association*

Andrew T. Sheeran
    *General Counsel*
FLORIDA AGENCY FOR HEALTH CARE
ADMINISTRATION
2727 Mahan Drive, Mail Stop #3
Tallahassee, Florida 32308
(850) 412-3670
andrew.sheeran@
ahca.myflorida.com

*Counsel for Plaintiff-Appellant*
*Agency for Health Care*
*Administration*

Kristen Larson
    *General Counsel*
FLORIDA DEPARTMENT OF
MANAGEMENT SERVICES
4050 Esplanade Way
Tallahassee, Florida 32399
(850) 922-2137
kristen.larson@dms.fl.gov

*Counsel for Plaintiff-Appellant*
*Florida Department of Management*
*Services*

# TABLE OF CONTENTS

INTRODUCTION ....................................................................... 1

    I.    The District Court Deprived Plaintiffs of Due Process .......... 3

    II.    This Civil Action Was and Is Live ......................................... 9

        A.    HHS Confuses Standing With Mootness ...................... 9

        B.    This Case Was Live When the District Court Dismissed It ............................................................... 12

        C.    This Case Remains Live ............................................. 20

    III.    The Court Should Reinstate the Preliminary Relief ............ 30

CONCLUSION ........................................................................ 30

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Ala. Legis. Black Caucus v. Ala.*,
  575 U.S. 254 (2015)................................................................5

*\*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013).............................................. 9–11, 17, 28

*BankWest, Inc. v. Baker*,
  446 F.3d 1358 (11th Cir. 2006) ..........................................11

*Church of Scientology of Cal. v. United States*,
  506 U.S. 9 (1992)................................................................1

*City of Miami Gardens v. Wells Fargo & Co.*,
  931 F.3d 1274 (11th Cir. 2019) .......................................6–8

*Diamond Alt. Energy, LLC v. EPA*,
  606 U.S. 100 (2025)...........................................................18

*FBI v. Fikre*,
  601 U.S. 234 (2024)...........................................................12

*Franciscan All., Inc. v. Becerra*,
  47 F.4th 368 (5th Cir. 2022) .......................................27–28

*Frey v. EPA*,
  270 F.3d 1129 (7th Cir. 2001) ...........................................26

*Grove City Coll. v. Bell*,
  465 U.S. 555 (1984)...........................................................15

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*,
  567 U.S. 298 (2012)............................................... 9, 13, 20

*McComb Children's Clinic, Ltd. v. Kennedy*,
  No. 5:24-cv-48 (S.D. Miss. Feb. 5, 2026), ECF No. 63.................. 29–30

*Nat'l Advert. Co. v. City of Miami*,
402 F.3d 1329 (11th Cir. 2005) .......................................... 19

**\*Nat'l Ass'n of Mfrs. v. Dep't of Def.**,
583 U.S. 109 (2018) ............................... 2, 13–14, 17

*Oakes v. Horizon Fin., S.A.*,
259 F.3d 1315 (11th Cir. 2001) .......................................... 19

*Socialist Workers Party v. Leahy*,
145 F.3d 1240 (11th Cir. 1998) .......................................... 12

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......................................................... 10

*Tennessee v. Kennedy*,
No. 1:24-cv-161, 2025 WL 2982069 (S.D. Miss. Oct. 22,
2025) .................................................................. 2, 22

*United States v. Mendoza*,
464 U.S. 154 (1984) .......................................................... 20

*United States v. Smith*,
30 F.4th 1334 (11th Cir. 2022) ............................................. 8

*United States v. Texas*,
599 U.S. 670 (2023) .......................................................... 20

*United Student Aid Funds, Inc. v. Espinosa*,
559 U.S. 260 (2010) .......................................................... 19

*Walker v. Azar*,
480 F. Supp. 3d 417 (E.D.N.Y. 2020) .................................... 24

*Walker v. Kennedy*,
790 F. Supp. 3d 138 (E.D.N.Y. 2025) .................................... 24

**Statutes**

31 U.S.C. § 3729(a)(1) ....................................................... 15

31 U.S.C. § 3730 ............................................................... 16

**Regulations**

42 C.F.R. § 438.3(d)(4) ............................................ 17, 24–25

45 C.F.R. § 92.5 .................................................... 15

45 C.F.R. § 92.101(a)(2) ........................................ 21–23

89 Fed. Reg. 37,522, 37,535, 37,598 (May 6, 2024) ..... 16, 24–25

*Defending Women from Gender Ideology Extremism and
      Restoring Biological Truth to the Federal Government*,
      Exec. Order No. 14,168, 90 Fed. Reg. 8,615 (Jan. 20, 2025) ........ 13–15

*Protecting Children from Chemical and Surgical Mutilation*,
      Exec. Order No. 14,187, 90 Fed. Reg. 8,771 (Feb. 3, 2025) .......... 13–15

**Other Authorities**

13B *Wright & Miller's Federal Practice & Procedure
      Jurisdiction* (3d ed.) ........................................ 21

5B *Wright & Miller's Federal Practice and Procedure* (4th
      ed.) ....................................................... 26

Fed. R. Civ. P. 8(e) ............................................. 25

# **INTRODUCTION**

If anyone's "argument conflates standing and mootness," it is the brief of the U.S. Department of Health and Human Services ("HHS"). HHS Br. at 24. HHS claims, repeatedly, that Plaintiffs have not shown a "credible threat of enforcement" of the Final Rule because of two non-binding executive orders and another district court's partial vacatur. *Id.* at 10–11, 17, 21, 29, 31. But whether a case is moot doesn't turn on whether *Plaintiffs* show an ongoing credible threat of enforcement. Rather, *HHS* bears the formidable burden of showing that it is "impossible for the court to grant any effectual relief whatever." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quotation marks omitted). HHS comes up short.

HHS first says that President Trump's executive orders "make clear that [HHS] will not require covered entities" to comply with the Final Rule. HHS Br. at 15. Although the executive orders are a good start, they do not create any legal rights or obligations—unlike the Final Rule. That decides this appeal. At the time of the district court's *sua sponte* dismissal, those executive orders were all the district court could possibly point to. But at most, the executive orders warranted a temporary stay pending

a repeal rule, not outright dismissal. Executive orders that express a policy disagreement with a rule, or even, unlike here, direct a repeal or revision of a rule, certainly don't render a challenge to a final rule moot, as the Supreme Court has held. *See Nat'l Ass'n of Mfrs.* ("*NAM*") *v. Dep't of Def.*, 583 U.S. 109, 120 n.5 (2018). And that's all this Court needs to say to reverse the district court's summary dismissal order.

HHS nevertheless asks this Court to address in the first instance the effect of another district court's partial vacatur in *Tennessee v. Kennedy*, entered while this case was pending on appeal. No. 1:24-cv-161, 2025 WL 2982069, at *13 (S.D. Miss. Oct. 22, 2025). This argument only works in principle if universal vacatur is authorized by the Administrative Procedure Act ("APA"), a premise the United States strenuously opposes. Even if this argument could work in principle, however, it doesn't work in practice. Plaintiffs pointed out three different reasons why the partial vacatur in *Tennessee* doesn't grant Plaintiffs the full relief they could potentially obtain. Pls.' Br. at 53–57. HHS's response is that the complaint doesn't *really* seek broader relief, but this line of argument gives up the game: HHS's reliance upon a jaundiced, narrow reading of the complaint shows that any jurisdictional defect is not "clearly

incurable," HHS Br. at 27, and therefore at most proves that Plaintiffs should receive a chance to argue for broader relief.

That gets us back to where Plaintiffs started and where this appeal ends: due process. The district court deviated from due process by summarily dismissing this case as moot, thus dissolving preliminary relief without allowing Plaintiffs a meaningful opportunity to address mootness. HHS claims that Plaintiffs had "ample" notice and opportunity to be heard based upon HHS's reference to "justiciability implications" in a status report filed just *hours* before the district court's dismissal, entered before Plaintiffs could reply to HHS. HHS Br. at 24 (quotation marks omitted). That contention defeats itself, and a violation of due process is not harmless. This Court should reverse.

## I.   THE DISTRICT COURT DEPRIVED PLAINTIFFS OF DUE PROCESS

The district court deprived Plaintiffs of due process by dismissing this case as moot without allowing Plaintiffs adequate notice and an opportunity to be heard on mootness. *See* Pls.' Br. at 34–40. This Court should accordingly reverse the dismissal order and remand so that the district court may reconsider mootness after full briefing and a hearing, if necessary, as due process requires.

HHS argues that Plaintiffs twice received adequate notice and an opportunity to respond on mootness, but both instances only highlight procedural unfairness.

First, HHS points to the district court's November 2024 docket notation, filed several months before the presidential transition and President Trump's executive orders, asking the parties to "[p]lease file a one-page update … informing the Court your view of the present status … [c]onsider[ing] in this short discussion the pending appeals as well as the likelihood of mootness given a pending change in administration." Dkt. 58;[1] *see* HHS Br. at 23–24. Plaintiffs then explained that the case wouldn't become moot until HHS successfully repeals the Final Rule, perhaps years from now, and HHS said only that it could not "speculate about possible future actions" by policymakers after the upcoming change in Presidential administration. *See* Pls.' Br. at 26–27 (quoting Dkt. 61, at 1). How HHS thinks this docket notation provided Plaintiffs with adequate notice that the district court would immediately dismiss the

---

[1] References to the district court CM/ECF docket are labeled "Dkt. #."

case as moot in light of the (then-non-existent) executive orders is a mystery.

HHS's second example only shows the eyebrow-raising unfairness of the district court's summary dismissal. HHS claims that Plaintiffs "had ample notice that the government was challenging the existence of a continuing case or controversy" based upon an HHS status report and response to Plaintiffs' motion to reopen. That status report fleetingly asserted purported "'justiciability implications'" arising from President Trump's executive orders to argue for a continued stay of the case. HHS Br. at 24 (quoting Dkt. 75, at 5).

But Plaintiffs never had a chance to respond to HHS's purported "justiciability implications." Just hours after the HHS status report, the district court stated that "[t]here is no case or controversy presently pending." Dkt. 76. This was all the more surprising because the district court had previously told Plaintiffs that they would get "to file a reply to the HHS filing fourteen (14) days thereafter." Dkt. 74. This example therefore proves rather than disproves that the district court violated "elementary principles of procedural fairness," *Ala. Legis. Black Caucus v. Ala.*, 575 U.S. 254, 271 (2015), by denying Plaintiffs "an opportunity to

5

respond before deciding *sua sponte* that" the case was moot, *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1285 (11th Cir. 2019) (per curiam).

Notably, despite feigning concerns with "justiciability implications" to maintain a stay, HHS never argued for dismissal of the civil action in that status report. If anything, the opposite is true: HHS argued that "the preliminary injunction" remained in effect and suggested that the district court should vacate the full closure order to address Plaintiffs' "confusion." Dkt. 75, at 3–4. HHS raised vague purported "justiciability implications" from the executive orders only to argue against lifting a stay and ordering "further proceedings." *Id.* at 4–6. In other words, HHS asked for a stay of further proceedings, not for a dismissal on mootness grounds.

HHS cites *Miami Gardens* to try to distinguish *Alabama Legislative Black Caucus*, HHS Br. at 23, but *Miami Gardens* doesn't help HHS. *Miami Gardens* explains that notice may sometimes be satisfied if "the opposing party raised the issue." *See id.* (quoting *Miami Gardens*, 931 F.3d at 1285–86). But *Miami Gardens* recognized that, even when notice is satisfied, due process still requires a district court to provide the

plaintiff a chance "to present his case." *Miami Gardens*, 931 F.3d at 1286. Here, the district court never gave Plaintiffs that chance. Plaintiffs went from "confusion" over the district court's full closure order to dismissed without explanation in the span of just a few hours, following a status report filed by HHS that Plaintiffs had no opportunity to respond to and that didn't even request a dismissal on grounds of mootness. That is an ambush, not the procedural fairness *Alabama Legislative Black Caucus* requires.

That ambush was even more unlawful here because the district court dismissed the case not for lack of standing, but on mootness grounds. HHS responds that a plaintiff's standing doesn't insulate a plaintiff from mootness, and that mootness is a "separate jurisdictional issue[]." HHS Br. at 24. True, but this response is a non sequitur. That difference is precisely what makes this case easier than *Alabama Legislative Black Caucus* or *Miami Gardens*: for mootness, the burden of proof shifts to the defendant—here HHS. Thus, Plaintiffs had no initial burden or obligation to continuously preemptively disprove a (frankly weak) mootness argument, unlike the plaintiff in *Miami Gardens*, which

failed to meet its initial burden of proof on standing. *Miami Gardens*, 931 F.3d at 1286.

HHS also argues that Plaintiffs' appeal somehow cures the district court's due process violation. HHS Br. at 25, 28. But HHS cites no authority for this view, which would mean that plaintiffs have no right to be heard in district court, and runs against this Court's practice of "revers[ing] district court orders and judgments in a variety of settings when such an opportunity was not provided." *United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) (listing cases). As this Court has held, "a violation of due process … is never harmless error." *Id.* (quotation marks omitted). The place to introduce new evidence and arguments is in district court, not in an appeal from a summary dismissal.

Last, HHS asks this Court to decide mootness in the first instance, claiming that a remand would be "pointless" because HHS thinks it should win on the merits of mootness. HHS Br. at 27. Of course, Plaintiffs disagree and believe the district court would come to a different conclusion if it allowed briefing on the question, new affidavits, or an amended complaint clarifying the scope of Plaintiffs' challenge to the Final Rule. If this Court nevertheless decides to address mootness now,

however, the Court should reverse because, as discussed next, the case is not moot.

## II. THIS CIVIL ACTION WAS AND IS LIVE

A case becomes moot only when intervening events make it "impossible for a court to grant *any effectual relief whatever* to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (emphasis added) (quotation marks omitted). HHS "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior" challenged here "could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). HHS hasn't met this formidable burden. This case was live when the district court dismissed it as moot, and it is live now.

### A. HHS CONFUSES STANDING WITH MOOTNESS

Unable to bear its burden, HHS instead invites the Court to shift the burden to Plaintiffs, demanding that Plaintiffs show evidence of a "credible threat" of an imminent enforcement action against them on appeal from a summary dismissal on grounds of mootness. HHS Br. at 10–11, 17, 21, 24, 29, 31; *see also id.* at 7, 12 & n.3 (arguing "plaintiffs

face" no "credible prospect of future injury at this juncture"). HHS's newly invented mootness test sure sounds like the test for an "injury in fact" necessary to support initial standing to seek pre-enforcement relief. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). So HHS seems to be arguing that Plaintiffs must continuously prove they have standing to maintain this suit today (or on the date of the district court's summary dismissal).

To quote HHS, this "argument conflates standing and mootness." HHS Br. at 24. Article III requires only that Plaintiffs show standing "[a]t the outset of this litigation." *Already, LLC*, 568 U.S. at 91. HHS no longer disputes that Plaintiffs had initial standing to challenge the Final Rule, HHS Br. at 12 n.3, 25, as the district court concluded in a thorough opinion, Dkt. 41, at 12–14.[2] HHS therefore "bears the formidable burden of showing that it is absolutely clear" that the challenged portions of the Final Rule are no longer in force, and that the action "could not

---

[2] HHS claims that "the government did not challenge plaintiffs' initial standing to challenge the [Final] Rule." HHS Br. at 25. This is false. *See* Dkt. 41, at 11 ("Defendants … suggest that Plaintiffs lack standing[.]"); Dkt. 33, at 26 ("This Court thus lacks jurisdiction whether analyzed as a matter of standing, ripeness, or statutory preclusion of pre-enforcement jurisdiction[.]" (citations omitted)).

reasonably be expected to recur" in the future. *Already, LLC*, 568 U.S. at 91.

HHS supports its sleight of hand by citing *BankWest, Inc. v. Baker*, 446 F.3d 1358, 1364, 1367 (11th Cir. 2006). HHS Br. at 12, 20, 25, 32. Unlike here, however, the defendant in *BankWest* did not have the "formidable burden" of demonstrating that the challenged conduct was "absolutely" over, *Already, LLC*, 568 U.S. at 91, because in *BankWest* the *plaintiffs*, rather than the defendant, voluntarily ceased the conduct that gave rise to their credible threat of injury. *BankWest*, 446 F.3d at 1365–67. Specifically, *BankWest* held that several banks' challenge to Georgia "payday lending" regulations became moot when the plaintiff banks stopped offering payday loans in response to federal regulations. *Id.* Because Plaintiffs here still want to engage in conduct that arguably violates the Final Rule's requirements, HHS must show it is "absolutely clear" that HHS will never enforce the Final Rule's requirements or others like them against Plaintiffs. *See Already, LLC*, 568 U.S. at 91. And it is not "absolutely clear" that HHS will never enforce the Final Rule against Plaintiffs. *See* Dkt. 61, at 1 ("At this time, Defendants cannot speculate about possible future actions by policymakers after the

upcoming change in Presidential administration."). So, it is not enough for HHS to demand that Plaintiffs show that an enforcement action is just around the corner.

HHS's attempt to invert the standard continues with its effort to avoid *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1246 (11th Cir. 1998), and *FBI v. Fikre*, 601 U.S. 234, 239–43 (2024), on the ground that the challengers in those cases had faced enforcement actions in the past whereas Plaintiffs here have not. HHS Br. at 31. This difference is irrelevant. HHS *wanted* to enforce the Final Rule against Plaintiffs. Pls.' Br. at 43–44. It didn't get to because Plaintiffs (and others) obtained a preliminary injunction and a broad stay of the Final Rule preventing enforcement. HHS cites no authority for its assertion that Article III mootness doctrine ceases to apply when Plaintiffs obtain relief preventing enforcement instead of risking ruinous actions for enforcement.

### B.   THIS CASE WAS LIVE WHEN THE DISTRICT COURT DISMISSED IT

Under the actual standard for mootness, this case was live when the district court dismissed it as moot because the district court could

still have granted Plaintiffs "effectual relief" by vacating the Final Rule. *Knox*, 567 U.S. at 307.

The executive orders didn't moot the case. As the Supreme Court has explained, when a challenged rule remains "on the books," a case is not moot, even if a new presidential administration has arguably expressed a policy disagreement with the final rule in an executive order. *NAM*, 583 U.S. at 120 n.5. In *NAM*, for example, the Supreme Court recognized that a challenge to the Obama Administration's 2015 definition of "Waters of the United States" wasn't moot, even though President Trump had *expressly* directed a repeal or revision of the rule through an executive order and even though the federal agencies there had at least proposed a rule repealing much of the Obama Administration's definition. *Id. NAM* makes this an easy case.

In fact, this case is even easier than *NAM*. At the time of the district court's *sua sponte* dismissal order, the only events the district court could possibly point to were two executive orders—*Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, Exec. Order No. 14,168, 90 Fed. Reg. 8,615 (Jan. 20, 2025) ("*Defending Women*"), and *Protecting Children from Chemical and*

*Surgical Mutilation*, Exec. Order No. 14,187, 90 Fed. Reg. 8,771 (Feb. 3, 2025) ("*Protecting Children*"). These orders did not make it "clear" that further effective relief was impossible. HHS Br. at 15. At most, the orders express a high-level legal or policy disagreement with some of the supporting rationales for the Final Rule, at least for rules based upon Section 1557 rather than the Social Security Act. But executive orders such as these have never mooted a final rule. *NAM*, 583 U.S. at 120 n.5.

"[F]or good reason." *Id.* The executive orders, by their own terms, create no rights and are not "enforceable" against the government, *see Defending Women*, 90 Fed. Reg. at 8,773; *Protecting Children*, 90 Fed. Reg. at 8,618, so they did not (and could not) eliminate the Final Rule. Nor do they commit HHS to repealing or not enforcing the Final Rule. HHS still has not made either commitment. *See* Dkt. 61, at 1 (stating HHS "cannot speculate about possible future actions …"). Indeed, the only concrete action that HHS even claims to have taken in response to the executive orders is posting a list of "sex-based" definitions on the website of the Office on Women's Health. HHS Br. at 14. Definitions on a website provide Plaintiffs with no relief from the Final Rule.

HHS characterizes the executive orders as "expressly disavowing the provisions of the [Final] Rule with respect to gender-identity discrimination that plaintiffs challenged." HHS Br. at 10; *see also id.* at 2, 14–15. That is an overstatement. Unlike the executive order at issue in *NAM*, *Defending Women* does not direct HHS to repeal or reconsider the Final Rule, *see* 90 Fed. Reg. at 8,615–18, and *Protecting Children* instructs HHS only to take "all *appropriate* actions to end the chemical and surgical mutilation of children … which *may* involve" Section 1557, *see* 90 Fed. Reg. at 8,772 (emphases added), allowing HHS considerable discretion.

Regardless, the executive orders do not relieve covered entities from their *binding* compliance obligations under the Final Rule. Pls.' Br. at 49–50. That includes the obligation to file an assurance of compliance with the Final Rule to continue receiving federal funds. 45 C.F.R. § 92.5; *see also Grove City Coll. v. Bell*, 465 U.S. 555, 574–75 (1984) (upholding defunding of a college for failure to file an assurance). That coerces compliance with the Final Rule because, regardless of HHS's enforcement priorities, HHS doesn't dispute that covered entities risk civil liability under the False Claims Act, 31 U.S.C. § 3729(a)(1), if they

promise to comply with the Final Rule but do not mean it. Such a claim could be brought by the United States *or by a private relator*, *id.* § 3730. The putative discretion of the United States to intervene and dismiss relator cases is cold comfort to covered entities accruing potentially millions of dollars in potential civil liability. *Contra* HHS Br. at 29–30.

The executive orders also fail to resolve the Plaintiffs' continued legal uncertainty about the validity of state laws and regulations that the Final Rule claimed to preempt as obstacles to the regulation. 89 Fed. Reg. 37,522, 37,535, 37,598 (May 6, 2024). In the absence of a new rule, the only way for Plaintiffs to get durable relief from the threats of losing federal funds, incurring civil liability, suffering conscience violations, and having their state law preempted was (and is) through a final judgment vacating the Final Rule, declaring it unlawful, and enjoining HHS from enforcing the statute in this manner ever again against Plaintiffs, as Plaintiffs requested. Dkt. 1, at 81 (Prayer for Relief (a)–(c)).

On top of this, Plaintiffs seek relief that the executive orders do not, on their face, cover. To give one example, Plaintiffs specifically seek vacatur of a provision of the Final Rule (purportedly promulgated by CMS under the Social Security Act) that purports to prohibit disparate

impacts on categories of individuals defined by sex, sexual orientation, race and ethnicity, and national origin, *see, e.g.*, 42 C.F.R. § 438.3(d)(4). Dkt. 1, ¶¶ 156, 235. The executive orders cannot reasonably be read to provide complete relief from this provision of the Final Rule, as they concern only gender identity and Title IX and Section 1557.

Moreover, even if the two executive orders gave Plaintiffs complete relief, which they don't, it is still far from "absolutely clear" that HHS's behaviors here "could not reasonably be expected to recur." *Already, LLC*, 568 U.S. at 91. Given HHS's clockwork reversals on Section 1557 in 2016, 2020, and 2024, it is reasonable to expect that a new policy reversal will accompany the next change in administration, and so on. At the very least, given this history, it is not "absolutely clear" that this expectation is unreasonable. That alone means this case remained live. *See id.*

The district court thus starkly departed from the law of mootness. *NAM*, 583 U.S. at 120 n.5. That is why not a single other district court reacted to the executive orders by dismissing a suit as moot or even suggesting mootness, *see* HHS Br. at 8–9, let alone in the summary fashion of the district court here. HHS's own conduct in *Tennessee* further undermines this argument. As HHS explains, the district court in

*Tennessee* entered a final judgment on the merits *despite* the executive orders, and HHS there never hinted that the case was moot, nor did it appeal the judgment to argue mootness under *Munsingwear. See generally* HHS Br. in Opp'n to Pls.' Mot. for Summ. J., *Tennessee*, No. 1:24-cv-161 (May 21, 2025), ECF No. 67. HHS's "silence on [mootness there] was telling—the proverbial dog that did not bark—because [HHS] routinely" makes jurisdictional arguments. *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 108 (2025). Indeed, before this Court, the government is arguing that a similar Title IX case is not moot, even though *Defending Women* is even more applicable to that case. Gov't Supp. Br. at 3, *Alabama v. U.S. Sec'y of Educ.*, No. 24-12444 (11th Cir. Aug. 22, 2025), ECF No. 113. Thus, HHS's attempt to defend the district court's premature dismissal is at odds with the Supreme Court decision in *NAM*, every other district court handling one of these cases, and the position of the United States in every other case.

Ironically, HHS's argument that *Defending Women* and *Protecting Children* moot this case also cannot be reconciled with its separate and principal argument that the "*Tennessee* court's vacatur" makes this case "plainly moot." HHS Br. at 11, 17, 28, 32. If *Defending Women* and

*Protecting Children* mooted this case, then the *Tennessee* case was also moot when, months after those executive orders, the Southern District of Mississippi entered its judgment partially vacating the Final Rule. But "the federal courts lack subject matter jurisdiction to entertain" "a moot suit," *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005) (quotation marks omitted), and "[a] judgment is 'void' … if it was rendered without jurisdiction of the subject matter," *Oakes v. Horizon Fin., S.A.*, 259 F.3d 1315, 1319 (11th Cir. 2001); *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270–71 (2010). HHS cannot imply that the *Tennessee* judgment is void while arguing that the judgment in *Tennessee* "plainly" moots this case. The truth is that neither *Tennessee* nor this case was moot, so *Tennessee* is not void, and the district court in this case got it wrong.

This appeal can be easily resolved. The case was not moot when the district court dismissed it, so the Court should reverse and remand, reinstate the preliminary relief, and allow the district court to consider on remand, after complying with the requirements of due process, how the Final Rule's partial vacatur in *Tennessee* affects this case going forward.

### C. THIS CASE REMAINS LIVE

If, however, the Court addresses the effect of the judgment in *Tennessee* in the first instance, the case is still not moot, because the district court may award "effectual relief," *Knox*, 567 U.S. at 307, including a broader vacatur, party-specific declaratory relief, and injunctive relief. Pls.' Br. at 51–58.

As an initial matter, the United States "vigorously disputes" that the APA authorizes universal vacatur or other non-party relief. *See United States v. Texas*, 599 U.S. 670, 693 (2023) (Gorsuch, J., concurring in the judgment). Yet HHS asks this Court to hold that a judgment awarding non-party relief that the United States argues is unlawful means that the Final Rule is "no longer in effect," HHS Br. at 13, even though HHS has yet to lift a finger to repeal the Final Rule. That position is untenable. Given that the United States refuses to acknowledge universal vacatur as a proper remedy, it remains far from clear that HHS will apply the judgment in *Tennessee* to non-parties.[3] Only the preclusive

---

[3] *Cf. United States v. Mendoza*, 464 U.S. 154, 158 (1984) ("nonmutual offensive collateral estoppel is not to be extended to the United States").

effect of a final judgment or a definitive repeal of the challenged provisions of the Final Rule will give Plaintiffs full relief.[4]

**Broader vacatur.** Plaintiffs could get a broader vacatur of the Final Rule on at least two grounds. Because "[p]artial relief in another tribunal … does not moot an action seeking additional relief," 13B *Wright & Miller's Federal Practice & Procedure Jurisdiction* § 3533.2.1 (3d ed.), Plaintiffs' requests for broader relief than *Tennessee* provides are dispositive, even if HHS applies the judgment in *Tennessee* to nonparties.

First, Plaintiffs are seeking a broader vacatur of the Final Rule's definition of "discrimination on the basis of sex." 45 C.F.R. § 92.101(a)(2). Plaintiffs sought to vacate any legal requirement that Plaintiffs allow males into female private spaces, provide and pay for gender-affirming care on any basis, or speak untruths about an individual's sex, whether that requirement is express or disguised through labels such as "[s]ex characteristics" or "[s]ex stereotypes." Dkt. 1, ¶ 5 (quoting 45 C.F.R.

---

[4] Of course, if HHS truly believes that the Final Rule is "no longer in effect," then it should repeal the Final Rule on that basis, rather than leaving it on the books.

§ 92.101(a)(2)(i), (v)); *id.* ¶¶ 164, 221, 227; *id.* at 81 (Prayer for Relief (a)). The district court in *Tennessee*, however, limited vacatur "to the extent that" the Final Rule includes "gender identity" within the definition of "on the basis of sex." *Tennessee*, 2025 WL 2982069, at *1, *11, *13. In particular, the district court specified that it was vacating subparagraph (iv) of the Final Rule's definition, which expands sex discrimination to "gender identity," but conspicuously did *not* include subparagraphs (i) or (v) of that definition, which expand sex discrimination to "[s]ex characteristics, including intersex traits" and "[s]ex stereotypes." *Id.* Vacating these subparagraphs, as Plaintiffs request, would provide effectual relief because it would prevent HHS from using "sex characteristics" and "sex stereotypes" as a Trojan horse to prohibit all forms of gender-identity discrimination. This concern is not speculative, as this is precisely what happened after the 2016 rule was vacated only in part. *See* Pls.' Br. at 54–55.

In response, HHS presents an artificially narrow view of Plaintiffs' complaint. As HHS would have it, Plaintiffs did not *really* ask the district court to vacate the Final Rule's prohibition of discrimination based on gender identity under "sex characteristics" and "sex stereotypes" because

the complaint does not single out 45 C.F.R. § 92.101(a)(2)(i) and (v). HHS Br. at 18. But the complaint expressly identifies these clauses as part of the rule's "missteps," Dkt. 1, ¶¶ 4–5, and seeks vacatur of all of 45 C.F.R. § 92.101(a)(2), Dkt. 1, at 81 (Prayer for Relief (a)). *See also, e.g.*, *id.* ¶¶ 132, 221, 229 (declaring the entire "on the basis of sex" provision unlawful).

HHS also claims that "Florida did not seek further relief in district court" after it obtained a stay of subparagraph (iv) of this provision, specifically covering gender identity. HHS Br. at 19. But of course, Florida "did not seek further relief" because the district court stayed proceedings pending appeal at HHS's request, and then summarily dismissed the case on remand without real explanation. Florida would not be appealing or making these arguments to keep the case live if it "did not seek further relief."

Second, even more clearly, Plaintiffs challenged the Final Rule because it unlawfully prohibits disparate impacts on groups, and the district court could award a broader vacatur on this separate basis. Dkt. 1, ¶¶ 156, 235. As the complaint explains, the Final Rule, among other things, requires covered entities to promise that they "will not use

any policy or practice that has *the effect* of discriminating on the basis of race; color; national origin; disability; or sex which includes discrimination on the basis of sex characteristics, including intersex traits; pregnancy or related conditions; sexual orientation; gender identity; and sex stereotypes." *Id.* ¶ 156 (emphasis added) (quoting 42 C.F.R. § 438.3(d)(4)). The district court preliminary enjoined this provision, holding that HHS lacks authority to prohibit "disparate impacts." Dkt. 41, at 28.

HHS argues that this provision of the Final Rule "has been vacated *in relevant part* and thus lacks any legal force or effect." HHS Br. at 20 (emphasis added). But the only "relevant part" that arguably lacks "force or effect" after the partial vacatur in *Tennessee* is the reference to "gender identity." Even if the *Tennessee* district court's partial vacatur erases the term "gender identity" from the regulatory list, HHS could still read 42 C.F.R. § 438.3(d)(4) to prohibit policies and practices that have disparate impacts on transgender groups based upon the provision's separate reference to "sex stereotypes," a category unknown in disparate-impact cases. *Cf. Walker v. Azar*, 480 F. Supp. 3d 417, 420–21 (E.D.N.Y. 2020); *Walker v. Kennedy*, 790 F. Supp. 3d 138, 141–42 (E.D.N.Y. 2025); 89 Fed.

24

Reg. at 37,574. Further, 42 C.F.R. § 438.3(d)(4) prohibits disparate impacts on other protected bases clearly not covered by *Tennessee*, including sex, sexual orientation, race and ethnicity, and national origin. So, the district court could grant broader relief to Plaintiffs by vacating, declaring unlawful, or enjoining this portion of the Final Rule in its entirety because HHS lacks authority to prohibit "disparate impacts." Dkt. 41, at 28.

HHS has no real response to this point. HHS argues only that "it is not clear from plaintiffs' complaint that they challenged the Rule on this basis." HHS Br. at 20. But the complaint was clear on this point, Dkt. 1, ¶¶ 156, 235, Plaintiffs raised in their motion, and the district court agreed with Plaintiffs' argument, that HHS lacks authority to prohibit "disparate impacts." Dkt. 41, at 28. And even if the complaint wasn't "clear" about this basis for the challenge, "[p]leadings must be construed so as to do justice," Fed. R. Civ. P. 8(e), not injustice. Dismissing a case as moot based upon a cramped reading of the complaint would not do justice.

Regardless, HHS's only line of defense fundamentally disproves that any jurisdictional defect here is "clearly incurable." HHS Br. at 25.

Even if HHS's narrow reading of the complaint is the best reading, this at most means that the Court should vacate the dismissal and remand the case with instructions to allow Plaintiffs an opportunity to amend their complaint, rather than dismissing outright. *Frey v. EPA*, 270 F.3d 1129, 1132 (7th Cir. 2001); *see also* 5B *Wright & Miller's Federal Practice and Procedure* § 1350 (4th ed.) ("[T]he district court should not dismiss the complaint on a Rule 12(b)(1) motion without giving the nonmoving party the opportunity to be heard, except in the relatively unusual case … in which the jurisdictional defect appearing on the face of the complaint clearly is irremediable.").

***Party-specific declaratory and injunctive relief.*** Besides vacatur, Plaintiffs also seek declaratory and injunctive relief. Plaintiffs' complaint seeks a declaration "that under any theory of Section 1557 and Title IX, [HHS] may not require covered entities to" have policies of "allowing males into female restrooms" or "say[ing] that men can get pregnant and give birth." Dkt. 1, at 82 (Prayer for Relief (e)). If granted, this relief would go beyond vacatur of the Final Rule to prevent HHS from ever using Section 1557 in a similar manner against Plaintiffs, affording

Plaintiffs long-lasting relief from the whiplash of HHS's regulatory pendulum.

HHS has no response to this either, except to claim that it involves "hypothetical future interpretations." HHS Br. at 20. This doesn't come close to meeting HHS's formidable burden. There is nothing hypothetical about an interpretation that HHS adopted and sought to enforce in 2016 and 2024, and that, to this day, remains on the books as part of the Code of Federal Regulations.

***Non-APA Claims.*** Finally, Plaintiffs assert distinct non-APA claims under the Spending Clause, the First Amendment, and the Religious Freedom Restoration Act ("RFRA"), Dkt. 1, ¶¶ 216–312. *Tennessee* didn't adjudicate these claims, which are party-specific. Plaintiffs' First Amendment and RFRA claims challenge "burdens placed on religious conduct" rather than "a particular regulation," so *Tennessee*'s partial vacatur of the Final Rule does not render these claims independently moot. *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374 (5th Cir. 2022). Rather, HHS must show "that it is absolutely clear the alleged[]" burdens on religious conduct "could not reasonably be expected

to recur." *Id.* at 376. As explained throughout, HHS has not carried that "formidable burden." *Already, LLC*, 568 U.S. at 91.

HHS claims that Plaintiffs "do not explain how the religious exercise of CMA's members is being substantially burdened by the government in light of the executive orders, the *Tennessee* court's vacatur, and the lack of any history of enforcement or credible threat of enforcement." HHS Br. at 21. HHS again confuses standing and mootness. As HHS doesn't dispute, CMA's members had a credible fear of enforcement when they sued, so it is now HHS's burden to prove that the requested relief would be ineffective. It is easy to explain why additional RFRA relief would be effective here: CMA's members remain subject to the Final Rule at least in part, including the obligation to file an assurance of compliance with the Final Rule, provide compliance trainings, rearrange internal policies, and so on. As the Fifth Circuit explained after partial vacatur of gender identity language in an earlier version of this rule, "[c]ourts have issued permanent injunctions in these contexts countless times." *Franciscan All.*, 47 F.4th at 379. Prevailing on a RFRA claim would allow CMA's members to seek broader, more certain, and more durable relief, exempting them from similar applications of

Section 1557 in the future and reducing their risk of civil liability under the False Claims Act.

HHS also argues that Plaintiffs have "forfeited" their Spending Clause and First Amendment claims by failing to argue that these claims are live. HHS Br. at 21. This is wrong. Plaintiffs devoted almost an entire page of the opening brief to arguing why these claims specifically remain live, explaining that the "same analysis" that applies to the RFRA claim applies to these claims as well. Pls.' Br. at 58. HHS, by contrast, says nothing about why it can meet its burden of showing that these claims specifically are moot.

Finally, HHS recently filed a notice of supplemental authority to draw attention to the Southern District of Mississippi's recent dismissal as moot of another, more limited challenge to the Final Rule, *McComb Children's Clinic, Ltd. v. Fink*, No. 5:24-cv-48 (S.D. Miss. Feb. 5, 2026), ECF No. 63. HHS 28(j) Letter, Dkt. 23. But *McComb* did not challenge the Final Rule's prohibition of disparate impacts, which alone keeps this case live, nor were there non-APA claims still at issue as here. *McComb*, slip op. at 2, 8–10. This case remains live regardless of whether *McComb* was also live.

Further, the Southern District of Mississippi's *McComb* ruling is unpersuasive. It mistakenly holds that the declaratory relief that the district court awarded to the plaintiff states in *Tennessee* moots a request from a different party in a different case for vacatur of the Rule's "sex stereotypes" language. *Id.* at 6. That is wrong. The plaintiffs' additional challenge to the "sex stereotypes" language that *Tennessee*'s vacatur left untouched kept the case live because it meant additional meaningful relief was still available to the plaintiffs, *see supra* pp. 21–22. *McComb* was also live.

## III. THE COURT SHOULD REINSTATE THE PRELIMINARY RELIEF

As Plaintiffs explained in their opening brief, this Court should reinstate the preliminary injunction and stay, which lapsed when the district court entered its unlawful *sua sponte* dismissal order. Pls.' Br. at 58–61. HHS has forfeited any contrary argument, so this Court should reinstate the preliminary relief for the reasons Plaintiffs identify in their opening brief. *See id.*

## CONCLUSION

For these reasons, this Court should reinstate the preliminary relief and reverse.

Dated: February 13, 2026

Respectfully submitted,

James Uthmeier
  *Attorney General*
Jeffrey DeSousa
  *Acting Solicitor General*

/s/ *Christine K. Pratt*
Christine K. Pratt*
  *Assistant Solicitor General*
FLORIDA OFFICE OF THE ATTORNEY
GENERAL
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
christine.pratt@myfloridalegal.com

* *Counsel of Record for*
*Plaintiff-Appellant State of Florida*

/s/ *James R. Conde*
James R. Conde*
Nicholas Cordova
Walker Fortenberry
BOYDEN GRAY PLLC
800 Connecticut Ave NW,
Suite 900
Washington, DC 20006
202-955-0620
jconde@boydengray.com

* *Lead Counsel and Counsel of*
*Record for Plaintiffs-Appellants*
*Florida Agency for Health Care*
*Administration and Florida*
*Department of Management*
*Services*

/s/ *Matthew S. Bowman*
Matthew S. Bowman*
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 (fax)
mbowman@ADFlegal.org

Julie Marie Blake
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, Virginia 20176
(571) 707-4655
(571) 707-4790 (fax)
jblake@ADFlegal.org

David A. Cortman
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road NE,
Suite D1100
Lawrenceville, Georgia 30043
(770) 339-0774
(770) 339-6744 (fax)
dcortman@ADFlegal.org

*\* Counsel of Record for
Plaintiff-Appellant Catholic Medical
Association*

Andrew T. Sheeran
  *General Counsel*
FLORIDA AGENCY FOR HEALTH
CARE ADMINISTRATION
2727 Mahan Drive, Mail Stop #3
Tallahassee, Florida 32308
(850) 412-3670
andrew.sheeran@
ahca.myflorida.com

*Counsel for Plaintiff-Appellant
Agency for Health Care
Administration*

Kristen Larson
  *General Counsel*
FLORIDA DEPARTMENT OF
MANAGEMENT SERVICES
4050 Esplanade Way
Tallahassee, Florida 32399
(850) 922-2137
kristen.larson@dms.fl.gov

*Counsel for Plaintiff-Appellant
Florida Department of
Management Services*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 6,111 words, excluding the portions exempted by Rule 32(f). This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure Rule 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook and 14-point font.

Dated: February 13, 2026          /s/ *James R. Conde*
                                  James R. Conde

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2026, I electronically filed the foregoing document with the Clerk of this Court by using the CM/ECF system, which will serve all parties automatically.

Dated: February 13, 2026

/s/ *James R. Conde*
James R. Conde